**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| **Torus Ventures LLC**,<br>Plaintiff,<br>v.<br>**Chuy's Opco, Inc.,**<br>Defendant. | **Case No. 7:26-cv-350-DC**<br><br>**PATENT CASE**<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT CHUY'S OPCO, INC.'S**
**RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS


I. PRELIMINARY STATEMENT .......... 1

II. BACKGROUND .......... 2

III. LEGAL STANDARD .......... 3

IV. ARGUMENT .......... 4

A. The Asserted Claims of the ’968 Patent Are Ineligible for Patent Protection Under 35 U.S.C. § 101 .......... 5

1. The Claims Are Directed to the Abstract Idea of Recursive Encryption/Decryption .......... 5

2. The Claims Supply No Inventive Concept Beyond Conventional, Generic Encryption/Decryption .......... 7

3. Claim 1 Is Representative, and the Asserted Claims Are No Narrower Than the Already-Invalidated Parent Claim .......... 9

4. The Court Can and Should Resolve Eligibility on the Pleadings Without Claim Construction .......... 10

B. Collateral Estoppel Independently Bars Relitigation of the ’968 Claims’ Patent Eligibility .......... 11

C. The Complaint Fails to State a Plausible Claim for Direct Infringement .......... 13

1. The Complaint Does Not Plausibly Allege That Chuy’s Itself Performs, Operates, or Controls the Accused Website or Uses the Accused System .......... 14

2. Chuy’s Does Not Perform the Claimed Method Because the Charted Steps Occur in the Website Visitor’s Browser .......... 15

3. Plaintiff’s Own Claim Chart Negates Any Plausible Inference of Infringement .......... 17

4. The Accused TLS 1.3 Technology Does Not Practice the Asserted Claim Limitations .......... 18

5. Alleging Compliance With a Public Standard Does Not Plausibly Establish Infringement of Each Limitation .......... 19

V. CONCLUSION .......... 20

## TABLE OF AUTHORITIES

**Cases**


*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018)........... 4, 11

*Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015)........... 14, 16, 17

*AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27 (Fed. Cir. 2024) ................................................. 17, 18

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014)............................................. *passim*

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................................ *passim*

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016) ...................................................................................................................... 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).................................................................. *passim*

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018)........................................................... 9

*BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018)........................................... 9

*Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342 (Fed. Cir. 2021) ...................................... *passim*

*Bourns, Inc. v. United States*, 537 F.2d 486 (Ct. Cl. 1976) ....................................................... 11

*Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019) .............................................. 11

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279 (Fed. Cir. 2011) ........ 15

*Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352 (Fed. Cir. 2017)......... 9

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000)....................................... 17

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256 (Fed. Cir. 2018) ........................... 4, 19

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317 (Fed. Cir. 2020) ................. 6

*Galderma Lab'ys, L.P. v. Teva Pharms. USA, Inc.*, 290 F. Supp. 3d 599 (N.D. Tex. 2017) ....... 15

*Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369 (Fed. Cir. 2016).................................... 4, 10

*Google LLC v. Hammond Dev. Int'l, Inc.*, 54 F.4th 1377 (Fed. Cir. 2022)................................. 12

*Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016) ................................. 5

*Kroy IP Holdings, LLC v. Groupon, Inc.*, 127 F.4th 1376 (Fed. Cir. 2025)................................ 13

*Lyda v. CBS Corp.*, 838 F.3d 1331 (Fed. Cir. 2016) ............................................................ 14, 16

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012) .................................. 7

*Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280 (Fed. Cir. 2024) ................................ 9, 10, 11

*Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337 (Fed. Cir. 2018) .......................................... 16, 17

*Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333 (Fed. Cir. 2013) ............................. 12, 13

*OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed. Cir. 2015) ...................................... 10

*PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310 (Fed. Cir. 2021) ............................. 5, 6, 8

*RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322 (Fed. Cir. 2017) ........................................... 9

*Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698 (Fed. Cir. 2023) ............................................ 11

*SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018) ................................................ 8

*Smartflash LLC v. Apple Inc.*, 680 F. App'x 977 (Fed. Cir. 2017) ............................................ 6, 7

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311 (Fed. Cir. 2015) ........................................................................................................ 12

*TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278 (Fed. Cir. 2020) ......................................................... 7

*Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559 (5th Cir. 2005) ...................................... 12

*Thompson v. City of Waco*, 764 F.3d 500 (5th Cir. 2014) ............................................................ 4

*Torus Ventures LLC v. Cawley Partners, LLC*, No. 2:24-CV-00552-JRG, 2025 WL 1799327 (E.D. Tex. June 30, 2025) ......................................................................... *passim*

*Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355 (Fed. Cir. 2023) ................................ 11

*XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282 (Fed. Cir. 2018) ............................................... 13

**<u>Statutes and Rules</u>**

35 U.S.C. § 101 ................................................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ *passim*

## I. PRELIMINARY STATEMENT

This is a patent case that a court has, in substance, already decided. Plaintiff Torus Ventures LLC ("Torus") accuses Defendant Chuy's Opco, Inc. ("Chuy's") of infringing U.S. Patent No. 7,457,968 (the "'968 Patent") based on nothing more than the fact that the Chuy's restaurant website uses the ordinary TLS 1.3 encryption that secures much of the modern Internet. The '968 Patent is a continuation of an earlier patent, U.S. Patent No. 7,203,844 (the "'844 Patent"), and the two share the same specification. In an action brought by this same plaintiff, the Eastern District of Texas ("EDTX") held the '844 Patent's representative claim patent-ineligible under 35 U.S.C. § 101 and dismissed the complaint with prejudice. The '968 Patent claims the same abstract idea, and it claims even less.

Two independent grounds each require dismissal of the sole count. First, the asserted claims are invalid under § 101. They are directed to the abstract idea of encrypting data that has already been encrypted, and then unwinding those layers one at a time, implemented with conventional cryptography on generic computers. The specification concedes that the protocol uses publicly known algorithms that any general-purpose computer can perform. The eligibility question can be decided now, on the pleadings, as it was for the parent patent. Because that prior judgment resolved the same question against Torus, collateral estoppel independently bars this suit.

Second, even if the '968 Patent were valid, the Complaint does not plausibly allege that Chuy's infringes it. Torus's own 197-page claim chart is fatal to its case. It shows that the patented steps are performed in the browser of each website visitor, not by Chuy's, and the Complaint pleads no facts suggesting Chuy's directs or controls those visitors. The chart also maps the claims to a generic public standard rather than to anything Chuy's built or does. Having pleaded itself out of court, Torus cannot state a plausible claim of infringement.

For either reason, and for both, the Court should dismiss the Complaint with prejudice.

## II. BACKGROUND

The patent Torus asserts here is a continuation of a patent a court has already held invalid. The ’968 Patent issued from an application that is a continuation of the application that matured into U.S. Patent No. 7,203,844. As a continuation of that application, it has the same written description as the parent. ’968 Patent, Related U.S. Application Data. A true and correct copy of the ’968 Patent is attached to the Complaint as Exhibit 1. Compl. ¶ 9. A copy of the parent ’844 Patent is submitted herewith as Exhibit A, and a copy of the opinion holding it ineligible is submitted as Exhibit B. In *Torus Ventures LLC v. Cawley Partners, LLC*, the court held the representative claim of that parent ’844 Patent directed to the abstract idea of “encrypting data that has already been encrypted,” found no inventive concept, and dismissed Torus’s complaint with prejudice. *Torus Ventures LLC v. Cawley Partners, LLC*, No. 2:24-cv-00552-JRG (lead), consolidated with *Torus Ventures LLC v. Dallas Capital Bank, N.A.*, No. 2:24-cv-00570-JRG, 2025 WL 1799327, at *6, *8, *11 (E.D. Tex. June 30, 2025) (Dkt. 77) (Ex. B).

The Complaint pleads a single count of direct infringement of the ’968 Patent, entitled “Method and system for a recursive security protocol for digital copyright control,” which issued November 25, 2008 from an application filed February 23, 2007. Compl. ¶¶ 9, 11. The asserted claims are claims 1, 2, and 4 through 10, each a method claim, as reflected in the claim chart Torus incorporated into the Complaint. Compl. Ex. 2; ’968 Patent claims 1, 2, 4–10.

The accused instrumentality is Chuy’s public website, chuys.com, and its purported use of the TLS 1.3 encryption standard. Compl. Ex. 2, at 1. The Complaint does not describe in its body how the accused website meets any claim limitation. Instead, it incorporates a lengthy claim chart, attached as Exhibit 2, that maps the asserted claims to the generic operations of the TLS 1.3 / IETF RFC standard. Compl. ¶ 14; Compl. Ex. 2, at 3.

The ’968 specification describes the claimed protocol in generic terms. It states that “[p]rior art systems utilize a few basic operational categories of digital data encryption and decryption technologies,” and it describes the “point of hardware granularity” as “for the most part, an implementation detail” on which “the overall operation of this protocol is not dependent.” ’968 Patent col. 2, ll. 15–20; col. 13, ll. 9–15. The claims themselves recite the steps of “obtaining a first decryption algorithm from a first bit stream” and “decrypting the remainder of the first bit stream,” and then “obtaining a second decryption algorithm from the first decrypted bit stream” and “decrypting the remainder of the second bit stream.” ’968 Patent col. 28, l. 65–col. 29, l. 10 (claim 1).

The claim chart also reflects how the accused protocol operates. For the limitations it cannot tie to Chuy’s, the chart substitutes assumption for evidence. It cites nothing showing that Chuy’s system links a pre-shared key to a client computer identifier. It simply declares that the system “must be having” that link. Compl. Ex. 2, at 184. Likewise, it identifies no “target unit specific key” in Chuy’s system and instead posits that such a key is “resident in hardware (e.g., memory storage of the client computer),” offering a hypothetical location rather than evidence that the key exists. Compl. Ex. 2, at 190. In both instances, Plaintiff has taken the claim language, assumed the accused system satisfies it, and presented that assumption as if it were a factual allegation. Consistent with that description, the chart identifies the decrypting “target unit” as “a client computer of the accused instrumentality.” That is, the receiving end of the web connection, rather than Chuy’s servers. *Id.*

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to “state a claim to relief that is plausible on its face.” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Fifth Circuit

applies the same standard. *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014). The court accepts the complaint's well-pleaded factual allegations as true, but the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Since the abrogation of Form 18, this plausibility standard governs claims of direct patent infringement. *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1259–60 (Fed. Cir. 2018) (applying the *Iqbal* and *Twombly* standard to a claim of direct infringement after the abrogation of Form 18).

Patent eligibility under 35 U.S.C. § 101 is a question of law, and "in many cases it is possible and proper to determine patent eligibility … on a Rule 12(b)(6) motion." *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016). Dismissal on eligibility grounds is permissible only when "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). Eligibility is assessed under the two-step framework of *Alice Corp. v. CLS Bank International.* The court first determines whether the claims are "directed to" a patent-ineligible concept such as an abstract idea, and, if so, whether the claim elements, individually and as an ordered combination, supply an "inventive concept" sufficient to transform the claim into a patent-eligible application. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014).

## IV. ARGUMENT

The Complaint should be dismissed on two independent grounds, either of which is sufficient. First, the asserted claims of the '968 Patent are ineligible for patent protection under 35 U.S.C. § 101. The eligibility question was already resolved against Torus as to the parent patent that shares the same specification, so both the merits and collateral estoppel require dismissal.

Second, even if the patent were valid, the Complaint fails to state a plausible claim of infringement, because Torus's own claim chart shows that the accused steps are performed by website visitors rather than by Chuy's and maps the claims only to a generic public standard.

### A. The Asserted Claims of the '968 Patent Are Ineligible for Patent Protection Under 35 U.S.C. § 101

The '968 Patent claims a "recursive security protocol for digital copyright control" that is nothing more than the abstract idea of encrypting data that has already been encrypted, and then unwinding those layers one at a time, implemented with conventional cryptography on generic computers. Compl. ¶ 9. The claims fail both steps of the *Alice* framework, they rise and fall with a representative claim, and the Court can resolve their ineligibility now on the pleadings, exactly as the Eastern District of Texas did with the parent '844 Patent that shares this specification. *Cawley Partners*, 2025 WL 1799327, at *11; '968 Patent, Related U.S. Application Data. The asserted claims cannot survive § 101.

#### 1. The Claims Are Directed to the Abstract Idea of Recursive Encryption/Decryption

The asserted claims are directed to an abstract idea, and they therefore fail the first step of the *Alice* inquiry. At *Alice* step one, the Court asks whether the claims are "directed to" a patent-ineligible concept such as an abstract idea. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. at 217. A claim that invokes a generic computer merely as a tool, and that does not "improve the functioning of the computer itself," is directed to the underlying idea rather than to any patentable application of it. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. at 225. The Federal Circuit has applied that principle to hold that computer-security and data-handling methods, including filtering and screening data, are abstract ideas. *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313 (Fed. Cir. 2016). So too, controlling access to data is a process that "'can be performed in the human mind, or by a human using a pen and paper.'" *PersonalWeb Techs. LLC v. Google LLC*,

8 F.4th 1310, 1317 (Fed. Cir. 2021) (quoting *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020)).

The '968 claims fit squarely within that line of authority. They recite the generic steps of "obtaining a first decryption algorithm from a first bit stream" and "decrypting the remainder of the first bit stream," applied recursively. '968 Patent col. 28, l. 65–col. 29, l. 10 (claim 1). That concept, decrypting data layer by layer, is the receiving half of the very same concept: encrypting data that has already been encrypted. An EDTX court has already held that idea fails as being abstract as to the parent '844 Patent, which shares the '968 specification. *Cawley Partners*, 2025 WL 1799327, at *6. The court there found that the operative steps of that patent "can be performed by a human with pen and paper," a conclusion that applies with equal force to the continuation asserted here. *Cawley Partners*, 2025 WL 1799327, at *6. The specification confirms that the protocol's computations could "ostensibly be accomplished by any general purpose computing device," indicating that the claims capture the idea rather than any concrete technological improvement. '968 Patent col. 27, ll. 56–57.

Federal Circuit decisions addressing analogous digital-content and encryption claims confirm the point. In *Smartflash LLC v. Apple Inc.*, the Federal Circuit held claims directed to conditioning and controlling access to data based on payment patent-ineligible, explaining that they invoke computers "merely as tools" to execute a fundamental, longstanding practice. *Smartflash LLC v. Apple Inc.*, 680 F. App'x 977, 982 (Fed. Cir. 2017) (nonprecedential). Likewise, in *PersonalWeb Technologies LLC v. Google LLC*, the court explained that both the problems of access to, retrieval of, and redundancy control of information, and the solutions to them, "have long predated computers." *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th at 1318. Because the '968 claims do no more than recite the age-old goal of restricting access to content through layered

encryption/decryption, they are directed to an abstract idea and fail *Alice* step one. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. at 217. In the parent case, Torus relied on *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1295 (Fed. Cir. 2020), for the proposition that multilevel encryption is not necessarily abstract. The court rejected that reliance because the *TecSec* claims expressly required accessing an object-oriented key manager, and it held that "what saved the claim in *TecSec* does not apply here." *Cawley Partners*, 2025 WL 1799327, at *5. The '968 claims recite nothing of the kind.

**2. The Claims Supply No Inventive Concept Beyond Conventional, Generic Encryption/Decryption**

Even if the claims were treated as something more than the abstract idea itself, they supply no inventive concept and fail *Alice* step two. At step two, the Court searches for an element or combination "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 218 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72–73 (2012)). The "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention," and adding the instruction to "apply it with a computer" does not confer eligibility. *Id.* at 223. Nor do computer functions that are "well-understood, routine, conventional activit[ies]" supply the missing concept. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. at 225. Merely storing, transmitting, retrieving, and writing data to implement an abstract idea likewise does not transform the claim. *Smartflash LLC v. Apple Inc.*, 680 F. App'x at 983.

The asserted claims recite only conventional decryption of bit streams. '968 Patent col. 28, l. 65–col. 29, l. 10 (claim 1). The specification removes any doubt on this point, admitting that the protocol is "based on publicly known algorithms" and that its computations could "ostensibly be accomplished by any general purpose computing device." '968 Patent col. 27, ll. 55–66; '844

Patent col. 28, ll. 6–10; *see also Cawley Partners*, 2025 WL 1799327, at *9. It further admits that "[p]rior art systems utilize a few basic operational categories of digital data encryption and decryption technologies," and it treats the degree of hardware implementation as "an implementation detail" on which "the overall operation of this protocol is not dependent." '968 Patent col. 2, ll. 15–20; col. 13, ll. 9–15. On these same specification admissions, the court found no inventive concept in the parent patent, holding that Torus "points to nothing showing that the combination of these conventional computer functions achieves more than what would be expected from multiple layers of encryption." *Cawley Partners*, 2025 WL 1799327, at *8. The court concluded that the '844 Patent applied the abstract idea "without any specificity using generic computer components and conventional methods[.]" *Cawley Partners*, 2025 WL 1799327, at *8.

Torus cannot rescue the claims by pointing to the recursive "architecture" of the encryption. In *BASCOM*, the Federal Circuit recognized that an inventive concept can reside in "the non-conventional and non-generic arrangement of known, conventional pieces," but it explained that claims that "merely recite the abstract idea … along with the requirement to perform it on the Internet, or to perform it on a set of generic computer components" "would not contain an inventive concept." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). The '968 claims are of the latter kind, and adding a layer of recursion changes nothing, because "[a] claim for a *new* abstract idea is still an abstract idea." *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th at 1318 (quoting *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018)). More fundamentally, the recursive layering on which Torus relies is itself the abstract idea to which the claims are directed, and that idea cannot supply its own inventive concept: "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that

ineligible concept." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018). Because "narrowing or reformulating an abstract idea does not add 'significantly more' to it," *id.* at 1291, the inventive concept must instead "be evident in the claims," *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017), and the '968 claims supply none. Conventional components on a generic computer cannot supply an inventive concept, *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. at 223, and the asserted claims recite nothing more, so they are ineligible.

#### 3. Claim 1 Is Representative, and the Asserted Claims Are No Narrower Than the Already-Invalidated Parent Claim

The asserted claims rise and fall together, and a single representative claim resolves the eligibility of all of them. Limiting the § 101 analysis to a representative claim is proper where the claims are "'substantially similar and linked to the same'" ineligible concept. *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024) (quoting *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017)). A court may treat a claim as representative where the patentee "'does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim,'" and once the movant makes that showing the burden shifts to the patentee, which forfeits differentiation if it offers no non-frivolous response. *Id.* (quoting *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018)). Here, asserted claims 1, 2, and 4 through 10 are all method claims reciting the same recursive encryption-and-decryption concept, and Torus did not dispute representativeness in the parent case. '968 Patent claims 1, 2, 4–10; *Cawley Partners*, 2025 WL 1799327, at *3.

The point is even stronger here than in the parent case, because the '968 claims are no narrower than the '844 claims already held ineligible. The adjudicated '844 claim 1 recited the encryption side of the recursive protocol, namely "encrypting a bitstream with a first encryption

algorithm," "associating a first decryption algorithm with the encrypted bit stream," and "encrypting both the encrypted bit stream and the first decryption algorithm with a second encryption algorithm," as a pure method reciting no structure. '844 Patent col. 29, ll. 16–25 (claim 1). The asserted '968 claim 1 recites the mirror-image decryption side of the same operation, namely "obtaining a first decryption algorithm from a first bit stream" and "decrypting the remainder of the first bit stream." And, like the adjudicated '844 claim 1, it recites no apparatus or structure. '968 Patent col. 28, l. 65 - col. 29, l. 10 (claim 1). The dependent claims add only generic, conventional elements. For example, a "target unit specific key" that is "resident in hardware of the target unit," that the specification admits may be implemented with conventional, general-purpose components, '968 Patent col. 27, ll. 55–66, and that Torus identifies no basis to treat as distinctively significant. '968 Patent col. 29 (claim 10). The '844 itself went further and included apparatus claims reciting a generic "processor" and "memory," yet the complaint asserting them was dismissed with prejudice on claim 1 as representative. '844 Patent col. 30 (claim 19); *Cawley Partners*, 2025 WL 1799327, at *3, *11. A structureless method claim covering the other half of the same recursive scheme, under the very specification already adjudicated, cannot fare better under *Alice*. Torus can identify no limitation of "distinctive significance" that would change the analysis. *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th at 1290. All asserted claims are therefore ineligible.

### 4. The Court Can and Should Resolve Eligibility on the Pleadings Without Claim Construction

The Court should decide eligibility now, because § 101 may be resolved on the pleadings and Torus has pleaded no fact dispute that would prevent it. Patent eligibility is a legal question that "in many cases it is possible and proper to determine … on a Rule 12(b)(6) motion." *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d at 1373 (citing *OIP Techs., Inc. v. Amazon.com, Inc.*, 788

F.3d 1359, 1362 (Fed. Cir. 2015)). Claim construction "is not an inviolable prerequisite to a validity determination under § 101," and where the claims are ineligible under all plausible constructions "the court need not engage in claim construction before resolving a Section 101 motion." *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 704 (Fed. Cir. 2023). To defeat dismissal on a claim-construction theory, a patentee "'must propose a specific claim construction … and explain why [any dispute] … must be resolved before the scope of the claims can be understood for § 101 purposes.'" *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th at 1294 (quoting *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361 (Fed. Cir. 2023)).

Neither prerequisite to deferral is present here. The court looking at the parent patent resolved the same eligibility question on a Rule 12(b)(6) motion, and determined that claim construction was not necessary to the § 101 analysis. *Cawley Partners*, 2025 WL 1799327, at *4-5. The Complaint pleads no facts showing an inventive concept. It recites infringement in the statutory language and asserts in conclusory fashion that the accused products "satisfy all elements" of the claims. Compl. ¶¶ 11, 13. Because an allegation of inventiveness "wholly divorced from the claims or the specification" does not defeat a motion to dismiss, *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019), and because "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law," *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d at 1125, the Court should reach § 101 now and dismiss with prejudice, as the court did with the parent patent. *Cawley Partners*, 2025 WL 1799327, at *11.

### B. Collateral Estoppel Independently Bars Relitigation of the '968 Claims' Patent Eligibility

Independent of the merits, collateral estoppel bars Torus from relitigating patent eligibility that has already been decided against it. Issue preclusion applies where the issue in the second

action is identical to one actually litigated in the first, and its determination was a necessary part of the prior judgment. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 572 (5th Cir. 2005). In the patent context, claims "need not be identical for collateral estoppel to apply." What controls is that "the issues of patentability be identical." *Google LLC v. Hammond Dev. Int'l, Inc.*, 54 F.4th 1377, 1381 (Fed. Cir. 2022) (citing *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1319 (Fed. Cir. 2015), and *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013)). Estoppel therefore reaches claims that "'use slightly different language to describe substantially the same invention,'" so long as "'the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity.'" *Id.* (quoting *Ohio Willow Wood*, 735 F.3d at 1342). As the Federal Circuit has explained, "it is the identity of the issues that were litigated," not identity of claim language, that determines whether estoppel applies, and estoppel governs where the claim differences do not materially alter the invalidity question. *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) (emphasis omitted) (citing *Bourns, Inc. v. United States*, 537 F.2d 486, 491 (Ct. Cl. 1976)).

Each requirement is met here. The eligibility of the shared recursive-encryption subject matter was actually litigated and necessarily decided in *Torus Ventures LLC v. Cawley Partners, LLC*, where the court held claim 1 of the parent '844 Patent ineligible under § 101 and dismissed Torus's complaint with prejudice. *Cawley Partners*, 2025 WL 1799327, at *10–*11. The '968 Patent is a continuation of the '844 Patent and carries the same written description, and the asserted '968 claims present the same recursive-encryption subject matter from the decryption side. The '844 Patent's representative claim 1 was an encryption-side method reciting no structure, '844 Patent col. 29, ll. 16–25 (claim 1), and the asserted '968 claim 1 is its decryption-side counterpart

and is equally structureless, ’968 Patent col. 28, l. 65–col. 29, l. 10 (claim 1). The differences in claim language thus do not materially alter the question of invalidity. Because the ’968 claims describe substantially the same invention and present the same patentability question, the issue is identical and estoppel applies. *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d at 1342. A final judgment of patent invalidity is entitled to preclusive effect, and Torus, the patentee in both suits, has already had its day in court. *XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1294 (Fed. Cir. 2018). That judgment is final and Torus did not appeal it.

The Federal Circuit’s recent decision in *Kroy IP Holdings, LLC v. Groupon, Inc.* does not help Torus. *Kroy IP Holdings, LLC v. Groupon, Inc.*, 127 F.4th 1376, 1381 (Fed. Cir. 2025), reh’g en banc denied (Fed. Cir. Aug. 1, 2025). *Kroy* held only that a Patent Trial and Appeal Board unpatentability decision, reached under the “preponderance of the evidence” standard, cannot estop assertion of unadjudicated claims in district court, which applies “the higher burden of clear and convincing evidence for invalidity.” *Id.* at 1380. The court expressly distinguished *Ohio Willow Wood*, explaining that “the district-court-to-district-court scenario presented in *Ohio Willow Wood* does not present the same burden of proof concern as the Board-to-district-court case before us.” *Id.* at 1381. Here the prior adjudication is a district-court § 101 judgment rather than a Board decision, and patent eligibility is a question of law, so the burden-of-proof concern that drove *Kroy* is absent and *Ohio Willow Wood* controls. *Id.* For these reasons, collateral estoppel independently requires dismissal of the sole count.

**C. The Complaint Fails to State a Plausible Claim for Direct Infringement**

Even if the ’968 Patent were valid, the Complaint does not plausibly allege that Chuy’s infringes it. The sole count pleads direct infringement, yet Torus’s own claim chart shows that the accused method is performed by website visitors rather than by Chuy’s, maps the claims to a generic public standard rather than to anything Chuy’s does, and describes technology that cannot

meet the claim limitations. Compl. Ex. 2. As a threshold matter, the Complaint also never plausibly alleges that Chuy's itself performs, operates, or controls the accused website at all. Each of the following defects independently defeats the count under *Twombly* and *Iqbal*.

### 1. The Complaint Does Not Plausibly Allege That Chuy's Itself Performs, Operates, or Controls the Accused Website or Uses the Accused System

Before the Court reaches how the accused protocol operates, the Complaint fails at the threshold because it never pleads facts showing that Chuy's (the only named defendant) itself performs the claimed steps, operates the accused website, or otherwise puts the accused TLS system into service. Direct infringement under § 271(a) requires that a single entity perform or be responsible for every step of a claimed method, and a defendant may be charged only with conduct it performs itself or that is attributable to it through its direction or control of others or a joint enterprise. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022–23 (Fed. Cir. 2015) (en banc). Those attribution facts must be pleaded, not assumed, and conclusory assertions that a defendant performs or controls the accused conduct do not satisfy *Twombly* and *Iqbal*. *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339–40 (Fed. Cir. 2016).

The Complaint does not clear that threshold. It alleges only that "Defendant directly infringed … by making, using, offering to sell, selling and/or importing" the accused products, and that Chuy's infringed "by having its employees internally test and use" them. Compl. ¶¶ 11–12. It identifies the accused instrumentality as "Chuy's public website, chuys.com," Compl. Ex. 2, at 1, yet it pleads no facts showing that Chuy's operates or controls that website, administers its TLS 1.3 configuration, or itself performs any charted step. The pleading assumes that Chuy's performs the accused acts, but never alleges facts establishing that it does. Just as a patentee "cannot assert a plausible claim for infringement … by reciting the claim elements and merely concluding that the accused product has those elements," *Bot M8 LLC v. Sony Corp. of Am.*, 4

F.4th 1342, 1353 (Fed. Cir. 2021), it cannot state a claim by naming a defendant and assuming, without factual allegation, that the defendant is the actor that performs the accused conduct.

The defect is independent of who performs the browser-side steps. To "use" a system within the meaning of § 271(a), a party must "put the invention into service, i.e., control the system as a whole and obtain benefit from it." *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011). The Complaint pleads no facts showing that Chuy's controls the accused system as a whole or places it into service. To the contrary, the only operative conduct Torus charts occurs at "a client computer of the accused instrumentality," Compl. Ex. 2, at 190, not at any system Chuy's is alleged to operate. Merely being associated with a website is not using the claimed system. *Centillion*, 631 F.3d at 1285.

Courts dismiss infringement claims at the pleading stage on precisely this defect. In *Galderma Laboratories, L.P. v. Teva Pharmaceuticals USA, Inc.*, the court dismissed where the complaint attributed the accused conduct to a corporate actor through undifferentiated, "collective" allegations and pleaded no facts specific to that defendant's own involvement. *Galderma Lab'ys, L.P. v. Teva Pharms. USA, Inc.*, 290 F. Supp. 3d 599, 617–18 (N.D. Tex. 2017). Here, the Complaint alleges infringing conduct in the abstract and never ties the performance of any claim step to Chuy's itself. Because the Complaint does not plausibly allege that Chuy's performs, operates, or controls the accused website or uses the accused system, the sole count fails for this reason as well.

#### 2. Chuy's Does Not Perform the Claimed Method Because the Charted Steps Occur in the Website Visitor's Browser

The Complaint pleads only direct infringement, but the charted steps are performed by third parties, not by Chuy's. Direct infringement of a method claim requires that a single actor perform every step, and "[d]irect infringement under § 271(a) occurs where all steps of a claimed

method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc). Performance is attributable to a defendant only where it "directs or controls others' performance," where the actors "form a joint enterprise," or where the defendant "conditions participation in an activity or receipt of a benefit upon performance of a step or steps … and establishes the manner or timing of that performance." *Id.* at 1022–23. Merely making a system available and instructing users is not enough.

Those attribution facts must be pleaded, not assumed. A divided-infringement claim "requires pleading facts sufficient to allow a reasonable inference that all steps of the claimed method are performed" and that performance is attributable to a single party either through its direction or control of the others or through a joint enterprise, and conclusory assertions of direction or control do not satisfy *Twombly* and *Iqbal*. *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016). Torus's own chart describes the charted decryption steps as occurring at the "target unit," which it identifies as "a client computer of the accused instrumentality," which is the website visitor's computer at the receiving end of the connection. Compl. Ex. 2, at 190. The website visitors who operate those client computers are neither Chuy's nor its agents, and the Complaint pleads no facts showing that Chuy's directs or controls their performance, that they form a joint enterprise, or that Chuy's conditions any benefit on their performance. Compl. ¶¶ 11–14.

The result is the same as in *Lyda v. CBS Corp.*, where the Federal Circuit affirmed dismissal because the complaint supplied "no allegations … that can form the basis of a reasonable inference that each claim step was performed by or should be attributed to" the defendant. *Lyda v. CBS Corp.*, 838 F.3d at 1340. This case is the mirror image of *Nalco Co. v. Chem-Mod, LLC*, where attribution was adequately pleaded because the plaintiff alleged that each step was performed "at

the direction and control of" the defendants. The Complaint here alleges nothing of the kind. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1352–53 (Fed. Cir. 2018). Because no single entity performs, or is alleged to be responsible for, every claimed step, the Complaint fails to state a claim for direct infringement. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d at 1022.

### 3. Plaintiff's Own Claim Chart Negates Any Plausible Inference of Infringement

Torus has pleaded itself out of court by incorporating a claim chart inconsistent with the requirements of its own claims. A patentee "may subject its claims to early dismissal by pleading facts that are inconsistent with the requirements of its claims," and where "the factual allegations are actually inconsistent with and contradict infringement, they are likewise insufficient to state a plausible claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1346, 1354 (Fed. Cir. 2021). Documents incorporated into the complaint are part of the pleading, and its allegations are taken as true unless directly contradicted by those documents. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 44 (Fed. Cir. 2024). A plaintiff cannot state a claim merely "by reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th at 1353.

The chart Torus incorporated into its Complaint does not support infringement. It negates it. Compl. ¶ 14. The chart maps the asserted claims to the generic operations of the public TLS 1.3 standard rather than to anything specific to Chuy's. Compl. Ex. 2, at 3. For limitations it cannot establish, the chart substitutes conjecture for fact, conceding for example that Chuy's system "must be having the pre-shared key linked with a client computer identifier[.]" Compl. Ex. 2, at 184. And for the hardware-residency limitation, the chart points to the standard's generic disclosure rather than to any Chuy's-specific fact. Compl. Ex. 2, at 190.

This case is unlike *AlexSam, Inc. v. Aetna, Inc.*, where the dismissal was vacated in relevant part because the attached documents showed only "tension" and did not "actually contradict[]" the infringement allegations. *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th at 45. Here the charts affirmatively demonstrate that the accused technology does not perform the claimed steps as required, which is the *Bot M8* scenario in which a patentee pleads "too much rather than too little" and thereby pleads itself out of court. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th at 1354. The Court need not credit the bare allegation of infringement, and the count should be dismissed. *Id.*

#### 4. The Accused TLS 1.3 Technology Does Not Practice the Asserted Claim Limitations

The chart's own description of TLS 1.3 confirms that the accused technology cannot meet the claim limitations, and allegations inconsistent with infringement cannot state a claim. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th at 1346. The asserted claims require "obtaining a first decryption algorithm from a first bit stream." '968 Patent col. 28, l. 65–col. 29, l. 10 (claim 1). But the chart shows that TLS 1.3 does no such thing. The endpoints "negotiate the cipher suite," selecting from the fixed set of cipher suites the standard itself defines. That is the selection of an already-implemented identifier, not the obtaining of an algorithm from a bit stream. Compl. Ex. 2, at 16, 31. The chart's attempt to supply the claimed second decryption step fares no better, because it maps that step to a "signature decryption algorithm i.e., SHA384ECDSA decryption algorithm" and labels the certificate's "[Signature Algorithm] sha384ECDSA," which is a digital signature rather than an encryption algorithm and yields no decrypted bit stream. Compl. Ex. 2, at 53–54. These mismatches appear on the face of the chart and the public standard it cites, so no factual development is needed to conclude that the accused instrumentality does not practice the claims. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th at 1346. The discrepancy between the '968 Patent's claims and the claim chart in Exhibit 2 can be graphically illustrated as follows:

**What Claim 1 Requires, and What Plaintiff's Chart Shows**




Claim language, '968 Patent col. 28, l. 65 to col. 29, l. 10. Accused operation as described in Compl. Ex. 2, at 16, 31, 53 to 54.
Both mismatches appear on the face of Plaintiff's own chart and require no fact outside the pleadings.

### 5. Alleging Compliance With a Public Standard Does Not Plausibly Establish Infringement of Each Limitation

Finally, alleging that Chuy's website uses TLS 1.3 does not plausibly allege that Chuy's practices every limitation of the asserted claims. Since the abrogation of Form 18, the *Twombly*/*Iqbal* plausibility standard governs direct-infringement pleadings, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d at 1259–60; *Iqbal*, 556 U.S. at 678. A court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Id.* at

678, and a patentee "cannot assert a plausible claim for infringement under the Iqbal/Twombly standard by reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th at 1353.

Torus's theory rests entirely on the premise that Chuy's website "utilizes TLS 1.3[.]" Compl. Ex. 2, at 1. But compliance with a public protocol does not show that Chuy's practices each distinct claim limitation, and the chart maps the claims only to generic TLS 1.3 operations, identifying nothing specific to Chuy's. Compl. Ex. 2, at 3. The Complaint thus supplies only the kind of threadbare, standard-based recital that *Iqbal* forbids, and it does not raise infringement above the speculative level. *Iqbal*, 556 U.S. at 678; *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th at 1353.

## V. CONCLUSION

For the foregoing reasons, Chuy's respectfully requests that the Court grant this motion and dismiss the sole count of the Complaint with prejudice. Because the asserted claims are ineligible under § 101 under a specification whose parent claims have already been held ineligible, and because the accused method is performed by third-party website visitors rather than by Chuy's, the deficiencies cannot be cured by amendment, and leave to amend should be denied.

DATE: November 2, 2026

Respectfully Submitted,

*/s/ Sid V. Pandit*
Siddhesh V. Pandit, VA Bar No. 75,686 (admitted in the Western District of Texas)
svp@maierandmaier.com
Timothy J. Maier, VA Bar No. 46,354 (*pro hac vice to be submitted*)
tjm@maierandmaier.com

**MAIER & MAIER PLLC**
345 South Patrick Street
Alexandria, VA 22314
(703) 740-8322 (phone)
(703) 991-7071 (fax)

Thomas J. Gohn
(TX Bar No. 24097742)
tjg@maierandmaier.com

**MAIER & MAIER PLLC**
8750 N. Central Expressway
Suite 1850
Dallas, Texas 75231
(703) 740-8322 (phone)
(703) 991-7071 (fax)

***Attorneys for Defendant Chuy's Opco, Inc.***

## CERTIFICATE OF SERVICE

On November 2, 2026, the foregoing was electronically filed using the Court's CM/ECF system, which sent notification of such filing to all registered counsel of record for Plaintiff.

By: *<u>/s/ Sid V. Pandit</u>*
Sid V. Pandit